1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TED DARNELL DANIELS,

                                    Plaintiff,

            v.

O ALVARADO, Correctional Officer; M
HARRIS, Correction Officer; A ROBERTS,
Correction Officer; W MITCHELL, Correction
Officer-Sergeant;

                                    Defendant.

Civil No.    07-cv-1822-JM (POR)

**REPORT & RECOMMENDATION
THAT DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT BE GRANTED
AND PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT BE DENIED**

**[Document No. 37]
[Document No. 44]**

I.      INTRODUCTION

        Plaintiff Ted Daniels ("Plaintiff") is a state prisoner proceeding *pro se* with an action filed

pursuant to 42 U.S.C. §1983.  The case is before the undersigned pursuant to S.D. Cal. Civ. R.

72.1(c)(1)(c) for Report and Recommendation on the parties' respective Motions for Summary

Judgment.

        Plaintiff alleges that Defendants Alvarado and Harris violated his civil rights by using

excessive force against him on October 7, 2005 while he was an inmate at the Richard J. Donovan

Correctional Facility.[1]  Defendants assert defendant Alvarado only used *de minimis* force against

plaintiff and defendant Harris did not apply any force to plaintiff.  Based upon the documents and

_____

[1]Plaintiff also alleges that Officer Roberts used excessive force against him on October 7, 2005.  However, Officer
Roberts was never served with the complaint and is thus not a party in these proceedings.

1  evidence presented in this case, and for the reasons set forth below, the Court recommends

2  Defendants' Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary

3  Judgment be **DENIED.**

4

5      **II.**      **BACKGROUND**

6

7          A.      Procedural Background

8

9        Plaintiff initially filed a Complaint against defendants on September 17, 2007.   The

10  Honorable Jeffrey T. Miller sua sponte dismissed the Complaint on November 1, 2007 for failure to

11  state a claim and granted plaintiff leave to amend.  (Doc. 3.)  Plaintiff filed a First Amended

12  Complaint ("FAC") on December 21, 2007, the operative pleading here, alleging an Eighth

13  Amendment excessive force claim, Fourteenth Amendment denial of due process claim and

14  conspiracy to violate constitutional rights claim.  (Doc. 5.)  Upon review of plaintiff's FAC, the

15  Court dismissed plaintiff's Fourteenth Amendment and Conspiracy claims without leave to amend.

16  Defendants then filed a Motion to Dismiss plaintiff's Eighth Amendment claim on July 3, 2008.

17  (Doc. 12.)  Magistrate Judge Louisa S. Porter issued a Report recommending that defendants'

18  motion be denied with respect to Defendants Alvarado and Harris and granted for defendant W.

19  Mitchell.  (Doc. 24.)  The Report did not address the claim of excessive force against Defendant

20  Roberts because he was never served.  Plaintiff objected to the Report because it did not compel the

21  Attorney General to provide plaintiff with an address for Defendant Roberts. (Doc. 25.)  Defendants

22  did not object to the Report.  On March 9, 2009, the District Court adopted the Report in its entirety.

23

24        The remaining defendants, O. Alvarado and M. Harris filed an Answer to plaintiff's FAC on

25  March 27, 2009.  (Doc. 27.)  Plaintiff filed his first Motion for Summary Judgment on April 13,

26  2009. (Doc. 29.)  In that motion, plaintiff claimed there is no genuine issue of material fact because

27  defendants did not object to the finding in Magistrate Porter's Report that plaintiff had pled

28  sufficient facts to make out an Eighth Amendment excessive force claim. Plaintiff supported his

motion with an affidavit stating he had been physically and emotionally scared by defendants'

1    conduct.  (Doc. 29-1.)  Plaintiff also attached excerpts from the Report and the Order adopting the

2    Report. (Doc. 29-2.)  Defendants filed an Opposition on May 8, 2009.  (Doc. 31.)  Plaintiff did not

3    file a Reply.  The Court denied plaintiff's motion on August 6, 2009 for failure to submit any

4    evidence in support thereof.  (Doc. 32.)

5        Plaintiff filed another Motion for Summary Judgment on September 2, 2009 on the same

6    ground as his previous motion.  (Doc. No. 37.)  In this motion, plaintiff also listed the injuries he

7    suffered as a result of defendants' conduct and attached medical records and an excerpt from a

8    medical journal in support.  Plaintiff also filed a statement of undisputed facts.  (Doc. 37-2.)

9        Defendants filed an Opposition on October 15, 2009 stating that plaintiff had not produced

10    admissible evidence to show defendants used excessive force against him or caused the injuries

11    described in the summary judgment motion.  (Doc. 39.)  Defendants also filed evidentiary objections

12    to the exhibits plaintiff attached to his Motion for Summary Judgment stating there was no

13    foundation for the exhibits, the exhibits were not properly authenticated and contained hearsay.

14        Plaintiff filed a Reply on October 30, 2009.  (Doc. 43.)

15        Defendants filed a Motion for Summary Judgment on November 4, 2009 and attached

16    declarations from defendants Alvarado and Harris, and Frederick Smith, plaintiff's cellmate at the

17    time of the incident.  (Doc. 44.)  In their motion defendants contend Officer Harris did not apply any

18    force to plaintiff and Officer Alvarado only applied *de minimis* force.  Defendants further contend

19    they are both entitled to qualified immunity.  (Doc. No. 44.)[2]  Plaintiff filed an Opposition on

20    December 23, 2009 disputing defendants' version of the facts.  (Doc No. 50)  Defendants filed a

21    Reply on December 30, 2009.  (Doc. No. 51.)

22

23        B.     Factual Background

24

25        The following facts are undisputed:   In October of 2005, Plaintiff was a prisoner at the

26    Richard J. Donovan Correctional Facility and housed in a cell with another inmate, Frederick Smith.

27    (Doc. 5 at 3.)  Plaintiff stated he had problems with Mr. Smith and requested a transfer to another

28

       [2]Defendants attached a Rand/Klingele notice to their Motion to inform plaintiff of the requirements and consequences of Defendants' Motion for Summary Judgment. (Doc. 44-5)

07cv1822

cell.  The prison administrator subsequently granted plaintiff's transfer request.  Id. at 4.  On the morning of the transfer, plaintiff gathered his belongings from his cell and waited at a table located in a prison common area.  Id.  Before plaintiff could be transferred, the prison started to conduct its daily inmate count.  Id.  Defendant Harris asked plaintiff to follow protocol and return to his cell for the inmate count.  Id.  Plaintiff refused on the ground that he was supposed to be transferred to another cell.  Defendant Alvarado then told plaintiff he would be transferred later that day but first needed to return to his original cell for the daily count.  Id.  Plaintiff refused again and told Defendant Alvarado that he would remain at the table for the inmate count.  Id. at 5.  Defendant Alvarado then threatened to send plaintiff to the Hold for his refusal to return to his cell.  Id. Ultimately, Officer Roberts handcuffed Plaintiff and, along with Defendant Harris,  escorted plaintiff to his cell.  Id.

The remaining facts are disputed between the parties.   According to plaintiff, when he arrived at his cell he observed his cellmate Frederick Smith inside "looking crazy."  Id.  Afraid that a fight between him and Mr. Smith would ensue once he entered the cell, plaintiff asked Officer Roberts to remove his handcuffs.  Id.  Officer Roberts denied plaintiff's request and told plaintiff to follow the proper routine, which plaintiff describes as entering the cell and standing with his back against the cell door.  Id.  That procedure allows officers to remove the handcuffs through the food slot located on the cell door.  Id.  Plaintiff became concerned that Mr. Smith would attack him before the officers could intervene and refused to enter the cell.  Id.  At that point, Officer Roberts "violently" grabbed plaintiff by the collar, threw him down onto the concrete floor and put his knee into plaintiff's neck.  Defendant Harris then jumped down onto plaintiff and put his knee into plaintiff's back.  Id. at 6.  Although plaintiff could not see Defendant Alvarado, plaintiff claims he felt her standing on his legs.  Id.  Throughout the entire incident, plaintiff remained handcuffed and motionless.

In contrast to plaintiff's assertions, Mr. Smith states he was never violent toward plaintiff nor did he make any threats to plaintiff.  Smith Decl ¶ 3-4.  Moreover, when the officers brought

1    plaintiff to his cell, Mr. Smith was not there.  Harris Decl. ¶ 6.[3]  Officer Roberts initially ordered

2    plaintiff to enter his cell and plaintiff refused.  Alvarado Decl. ¶ 10.  After Officer Roberts ordered

3    plaintiff to enter the cell again, plaintiff took two steps towards the cell then "suddenly shot

4    backwards out of the cell,  colliding into [] Officer Roberts, almost pushing him over the second-tier

5    railing."  Id.  Officer Roberts then grabbed plaintiff and ordered him to get on the ground.  Id. ¶ 11.

6    After plaintiff refused, Officer Roberts pulled plaintiff to the ground and pressed his body weight

7    against him in order to regain control.  Id; Harris Decl ¶ 8.  While on the ground, plaintiff began

8    kicking his legs repeatedly.  Alvarado Decl ¶11. Because plaintiff, with a height of six feet, four

9    inches and weight of 220-240 pounds at the time of the incident, was significantly larger than

10   Officer Roberts, who is five feet, two inches tall,  Defendant Alvarado went to assist Officer Roberts

11   by sitting on plaintiff's legs.  Id. ¶11-12.   As Officer Roberts and Defendant Alvarado were able to

12   control the plaintiff, Defendant Harris did not get involved.  Id; Harris Decl ¶9.

13

14       **III.    LEGAL STANDARD**

15

16       Summary judgment is appropriate when "the pleadings, the discovery and disclosure

17   materials on file, and any affidavits show that there is no genuine issue as to any material fact and

18   that the movant is entitled to judgment as a matter of law."  F.R.C.P. 56(c).  "[T]he substantive law

19   will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

20   A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could

21   return a verdict for the nonmoving party."  Id.

22       The moving party bears the initial burden of showing that no genuine issue of material fact

23   exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may meet this burden

24   either by producing evidence to demonstrate there is no genuine issue of material fact or by showing

25   that the non- moving party does not have enough evidence to support its case.  Id.  "If the nonmoving

26   party cannot muster sufficient evidence to make out its claim, a trial would be useless and the moving

27

28
_____

[3]According to Mr. Smith, he does not remember viewing any altercation between the officers and plaintiff that took place outside of his cell.  Smith Decl ¶¶6-7.  In addition, because of Mr. Smith's classification at the time of the incident Mr. Smith claims he was not required to be in his cell for the inmate count.  Id. ¶7.

07cv1822

1  party is entitled to summary judgment as a matter of law." Id. at 331.

2        A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is

3  based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v.

4  McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing

5  affidavit where, even though verification not in conformity with 28 U.S.C. §1746, plaintiff stated

6  under penalty of perjury that contents were true and correct, and allegations were not based purely on

7  his belief but on his personal knowledge). However, an unverified complaint is "insufficient to

8  counter a summary judgment motion supported by affidavits." Lew v. Kona Hosp., 754 F.2d 1420,

9  1423 (9th Cir. 1985); see also Coverdell v. Department of Social and Health Services, 834 F.2d 758,

10  762 (9th Cir. 1987) (opposition repeating "unsworn factual allegations" contained in unverified

11  complaint does not constitute evidence that can be used to counter summary judgment motion).

12        On a motion for summary judgment, the Court will draw all plausible inferences in favor of

13  the nonmoving party. Hunt v. Cromartie, 526 U.S. 541, 552 (1999). Moreover, "[w]here a plaintiff

14  is *pro se* in a civil rights case, the court must be careful to construe the pleadings liberally and afford

15  plaintiff any benefit of the doubt." Karim- Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623

16  (9th Cir. 1988). However, this does not exempt plaintiff from the responsibility of providing specific,

17  non-conclusory facts to defeat defendants' motion for summary judgment. Jeffers v. Gomez, 267

18  F.3d 895, 907 (9th Cir. 2001). The Court need not "scour the record in search of a genuine issue of

19  material fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996)

20

21  **IV.     DISCUSSION**

22

23  **1.      Defendants' Motion for Summary Judgment**

24

25        Defendants contend they are entitled to summary judgment because there is no genuine issue

26  of material fact with respect to plaintiff's Eighth Amendment claim and even if a genuine issue of

27  material fact exists, they are entitled to qualified immunity. In their motion, defendants assert

28  defendant Alvarado used *de minimis* force that was "necessary and reasonable under the

circumstances" [Doc. 44-1 at 6] and defendant Harris did not apply any force to plaintiff. Id. at 11.

1   To support their contention, defendants attached three declarations to their summary judgment

2   motion.

3        In opposition, plaintiff makes a blanket statement disputing defendants' version of the facts.

4   See Doc. 50 at 1 ("Plaintiff Object to Defendant's following declaration in Support of Defendant's

5   Cross-Motion For Summary Judgment and of ex-cellmate Frederick Smith . . . Plaintiff further

6   dispute and Objects and disagrees to all and any Opposing answers or theorys in their counter-

7   affidavit or other evidence (sic).").  However, plaintiff did not attach any declarations or affidavits to

8   his opposition to support the allegations in his FAC.  Plaintiff's primary argument is that the

9   Magistrate Judge accepted plaintiff's version of events when she issued her report recommending the

10  denial of Defendants' Motion to Dismiss.  Because defendants did not object to the Magistrate

11  Judge's Report, plaintiff contends defendants are now foreclosed from disputing plaintiff's version of

12  events.  Id. at 4 ("the Magistrate . . . found that the Defendants had in fact violated Plaintiff's 8th

13  Amend Rights . . . The Defendants did not make Objections the Magistrates Report date February 6,

14  2009, which consequently waived their rights to Object later (sic)." ).

15       The Court notes that plaintiff previously made this argument in his first Motion for Summary

16  Judgment. (Doc. 29 at 1.) ("Because the Honorable United States District Judge of this court also

17  Adopted the Magistrates Report and Recommendations makes it obviously Clear and Convincing that

18  the defendants cannot satisfy the Prerequisite for the existence of genuine material fact to support a

19  trial or a reason to Prohibit this Court from using its authority to grant Summary Judgment . . .

20  .(sic)").  Plaintiff also attached an affidavit to that motion for summary judgment.  However, plaintiff

21  did not state any factual allegations in his affidavit.  Instead, plaintiff stated he is "still Emotionally

22  and Physically scared and traumatized from being Physically abused and humiliated by the

23  defendants." (Doc. 29-1 at 2.)  The Honorable Jeffrey T. Miller denied plaintiff's motion for

24  summary judgment for "failure to submit any evidence in support of his motion." (Doc. 32 at 2).

25  Judge Miller also noted that the Court's order denying defendant's Motion to Dismiss and plaintiff's

26  unverified complaint did not constitute evidence in support of a summary judgment motion.[4]  Id. at 1.

27  _____

28     [4]In her Report recommending the denial of defendant's Motion to Dismiss plaintiff's Eighth Amendment claim, Magistrate Judge Porter stated "Plaintiff pleads sufficient facts to support an excessive force claim against Defendants Alvarado and Harris." (Doc. 24 at 9.)  Judge Porter also stated that "[t]he court looks not at whether the plaintiff will 'ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" Id. at 4 (internal citation

1

2        Based on the foregoing, the Court finds plaintiff did not submit any evidence to

3  oppose defendants' motion for summary judgment.  However, in order to prevail on summary

4  judgment, defendants must still meet their burden of demonstrating there is no genuine issue of

5  material fact.

6

7        A.       Excessive Force

8

9        "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the

10 Constitution and laws of the United States, and must show that the alleged deprivation was

11 committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988)

12       Plaintiff's FAC alleges use of excessive force by defendants Alvarado and Harris in violation

13 of his Eighth Amendment rights. (Doc. 5.)  Defendants assert the force used by Defendant Alvarado

14 was de minimis and proportionate under the circumstances.  Defendants further assert Defendant

15 Harris did not use any force against plaintiff.

16       A prison guard's use of force against an inmate violates the Eighth Amendment's prohibition

17 of cruel and unusual punishment when it involves the "unnecessary and wanton infliction of pain."

18 Whitley v. Albers, 475 U.S. 312, 319 (1986).  However, "[t]he infliction of pain in the course of a

19 prison security measure . . . does not amount to cruel and unusual punishment simply because it may

20 appear in retrospect that the degree of force authorized or applied for security purposes was

21 unreasonable, and hence unnecessary in the strict sense."  Id.  "The Eighth Amendment's prohibition

22 of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis

23 uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of

24 mankind."  Wilkins v. Gaddy, 130 S.Ct 1275 (2010).  Furthermore, physical force used by prison

25 staff against inmates does not constitute an Eighth Amendment violation when it is used in proportion

26 to the requirements of a given situation.  Hoptowit v. Ray, 682 F.2d 1237, 1251 (9th Cir. 1982).

27

28

omitted).  Judge Porter did not make any factual findings with respect to plaintiff's Eighth Amendment claim that can be used
as evidence to support or oppose a motion for summary judgment.

07cv1822

Prison officials should be accorded a certain degree of deference with respect to actions taken to ensure the safety of prison personnel and inmates and to maintain order.  Bell v. Wolfish, 441 U.S. 520, 547 (1979).   That deference "does not insulate from review actions taken in bad faith and for no legitimate purpose." Id. at 322.  "The core judicial inquiry is whether the [prison guard] administered force in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. "Under the Eighth Amendment, we look for malicious and sadistic force, not merely objectively unreasonable force." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002).  The law makes clear that a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives does not amount to a triable issue of fact.  See Whitley, 475 U.S. at 312.  An Eighth Amendment violation occurs when the officer uses force they "could not plausibly have thought necessary."  McRorie v. Shimoda, 795 F.2d 780, 784 (9th Cir. 1986)

Furthermore, not every instance of the use of excessive force gives rise to a cause of action under § 1983. To be actionable under § 1983, the alleged excessive force must rise to constitutional dimensions. To determine if the constitutional line is crossed where the claim arises under the Eighth Amendment the factors to be examined are (1) the need for application of force, (2) the relationship between the need and amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.  Hudson, 503 U.S. at 7.

In White v. Roper, the ninth circuit addressed the need for force when a prisoner refuses to return to his cell.  901 F.2d 1501(9th Cir. 1990).   In White, three officers escorted the plaintiff, a pretrial detainee, to a new cell.  Upon arrival at the cell, the inmate currently residing there, Mr. Shaw, blocked the entrance to the cell and stated he did not want a new cellmate.  Despite Mr. Shaw's actions, the officers ordered plaintiff to go inside the cell.  Plaintiff initially refused and told one of the officers that Mr. Shaw had a weapon; however, the officers repeated their orders for plaintiff to go inside the cell.  The plaintiff then backed away from the cell and started proceeding

1  back in the direction from whence he came.  The three officers then forcibly subdued plaintiff
2  causing plaintiff to cut his wrist and sustain bruises all over his body.  Immediately afterward, one of
3  the officers went inside the cell to resolve the issue of Mr. Shaw not wanting a new cellmate. Mr.
4  Shaw then attacked that officer with a weapon.

5          The <u>White</u> Court found that plaintiff's refusal to enter his cell created the need for force from
6  the prison officials.  The court found this was true even though plaintiff's fears were substantiated
7  when Mr. Shaw  attacked one of the officers with a weapon minutes after plaintiff refused to enter the
8  cell.  In its opinion, the <u>White</u> Court acknowledged that while the parties dispute the amount of force
9  used, plaintiff did not show that "he required or even that he requested medical treatment for the cut
10 wrist and the bruises he allegedly suffered . . . that he lost consciousness at any time, or that he
11 suffered any permanent injury" and thus summary judgment was properly granted for defendants.
12 901 F.2d at 1507.

13         In the instant matter, it is undisputed that plaintiff disobeyed the orders of Officers Alvarado
14 and Harris to return to his cell and Officer Roberts' order for plaintiff to enter his cell.  Under <u>White</u>,
15 plaintiff's refusal to enter his cell, even if based on fear of his cellmate, created the initial need for
16 force by Officer Roberts.

17         Defendant Alvarado admits she also used force against plaintiff.  Alvarado Decl ¶12.  She
18 states in her declaration that a large size disparity existed between plaintiff and Officer Roberts, with
19 plaintiff weighing approximately 240 pounds  and being over a foot taller than Officer Roberts.  <u>Id.</u> at
20 ¶11.  Because of the size disparity, defendant Alvarado helped Officer Roberts bring plaintiff under
21 control.  <u>Id.</u>  As plaintiff did not submit any evidence to refute these statements, the Court will accept
22 these facts as true.  Having observed a fellow officer begin to subdue a disobedient prisoner
23 significantly larger than himself, the Court finds it was reasonable for defendant Alvarado to perceive
24 that her assistance was necessary.
25
26         The next inquiry is whether defendant Alvarado used a proportionate amount of force.
27 Defendant Alvarado assisted Officer Roberts by sitting on plaintiff's legs.  <u>Id.</u>  Defendant Alvarado
28 states she chose this method of force because plaintiff started kicking his legs after Officer Roberts
   brought him to the ground and could have injured Officer Roberts or herself.  <u>Id.</u>  It is not alleged or

1   stated that defendant Alvarado used any force besides sitting on plaintiff's legs or that she sat on his

2   legs with the purpose of causing injury, rather than regaining control of plaintiff.   Furthermore, while

3   the nature of the injury sustained is not determinative of whether excessive force was used, it is a

4   factor to be considered.  Plaintiff has never alleged that his legs were injured in any manner during

5   the incident.  Furthermore, immediately after the incident, plaintiff was able to walk to the MTA for

6   examination, verbalize the incident to the official in charge and, twenty minutes later, was able to

7   transport himself, and his property, to his new cell. (Doc. 5 at 6.)  The Court thus finds the act of

8   sitting plaintiff's legs was a proportionate response to the situation.

9       The Court further finds that defendant Alvarado's actions constituted a *de minimis* amount of

10  force.  See, e.g., Moore v. Machado, 2009 WL 4051082, at *5 (N.D. Cal. 2009)(throwing prisoner

11  against the wall then twisting and bending his arm is *de minimis*); Anthony v. Shackmann, 2009 WL

12  1065071, 5 (D.Or. 2009) (single open-handed blow to inmate's temple is *de minimis*); Crow v. Leach,

13  1995 WL 456357, at *3 (N.D. Cal. July 28, 1995) (pushing inmate into chair that results in his

14  shoulder going through a window is *de minimis*); Jackson v. Hurley, 1993 WL 515688, at *2 (N.D.

15  Cal. Nov. 24, 1993)(striking prisoner in the back of his neck with forearm and kicking him in the

16  ankle is *de minimus* force).

17      Plaintiff has produced no evidence to show that Defendant Alvarado's actions were based on

18  malicious or sadistic motives.  Instead the evidence demonstrates that defendant Alvarado acted with

19  the good faith intent of regaining control over a prisoner who repeatedly disobeyed orders.  As a

20  result, her use of *de minimis* force was not "repugnant to the conscience of mankind" and did not

21  violate plaintiff's Eighth Amendment rights.  Accordingly, the Court recommends that summary

22  judgment be **GRANTED** with respect to defendant Alvarado.

23      The Court's analysis differs slightly with respect to defendant Harris.  The parties give widely

24  different versions about defendant Harris' involvement in this incident.  In his unverified FAC,

25  plaintiff claims that after Officer Roberts brought him to the ground, defendant Harris jumped on him

26  and then put his knee into plaintiff's back, using the force of his entire body weight of approximately

27  285 pounds.  In contrast, defendant Harris claims in his declaration that he did not get involved in the

28

1    incident and never applied any force to plaintiff.[5]

2            As mentioned previously, an unverified complaint is "insufficient to counter a summary

3    judgment motion supported by affidavits." Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

4    While the Court is required to resolve all plausible inferences in plaintiff's favor, the Court is not

5    required to use facts not supported by any evidence.  In this instance, plaintiff has not offered any

6    evidence to refute defendant Harris' sworn declaration  that he did not apply any force to plaintiff.[6]

7    The use of force is an essential element of an excessive force claim.  Thus, in the absence of any

8    evidence demonstrating that defendant Harris used force against plaintiff, the Court also recommends

9    that summary judgment be **GRANTED** for defendant Harris.

10

11           B.    Qualified Immunity

12

13           Defendants also contend they are entitled to summary judgment based on the doctrine of

14   qualified immunity.  Qualified immunity will shield a prison official from civil liability when "their

15   conduct does not violate clearly established statutory or constitutional rights of which a reasonable

16   person would have known." Pearson v. Callahan, 129 S.Ct 808, 815 (2009).  This doctrine applies

17   regardless of whether the official's conduct is "a mistake of law, a mistake of fact, or a mistake based

18   on mixed questions of law and fact."  Id. (citing Groh v. Ramirez, 540 U.S. 551, 567 (2004)

19   (Kennedy, J., dissenting).  In sum, this standard "protect[s] 'all but the plainly incompetent or those

20   who knowingly violate the law."  Jeffers v. Gomez, 267 F.3d 895, 910 (citing Hunter v. Bryant, 502

21   U.S. 224, 229 (1991).

22           Until recently, courts were required to undergo a two-step inquiry to determine whether a

23   defendant was entitled to qualified immunity in a particular situation.  The first inquiry asks whether

24   "'[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the

25   officer's conduct violated a constitutional right.'"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  "A

26   _____

27           [5]Defendants further claims that plaintiff never specifically accuses defendant Harris of excessive force but rather
     states a male corrections officer injured his back.  The Court notes, however, that plaintiff does mention defendant Harris
28   by name in his FAC when describing the incident.  (See Doc. 5 at 5-6.)

             [6]Defendant Alvarado also states in her declaration that defendant Harris never applied any force to plaintiff.
     Alvarado Decl ¶ 12.

1  negative answer ends the analysis, with qualified immunity protecting the defendants from liability.

2  If a constitutional violation occurred, a court must further inquire 'whether the right was clearly

3  established.  If the law did not put the [officials] on notice that [their] conduct would be clearly

4  unlawful, summary judgment based on qualified immunity is appropriate.'"  Clement v. Gomez, 298

5  F.3d 898, 903 (9th Cir. 2002) (internal citations omitted).

6      In an excessive force case, "[q]ualified immunity operates . . . to protect officers from the

7  sometimes 'hazy border between excessive and acceptable force." Saucier, 533 U.S. at 206 (citing

8  Priester v. Riviera Beach, 208 F.3d 919, 926-927 (11th Cir. 2000).  Even if an officer is mistaken in

9  their belief that a particular use of force is acceptable, "qualified immunity can apply in the event the

10  mistaken belief was reasonable."  Id.

11      In Pearson v. Callahan, the Court held that courts are not required to analyze qualified

12  immunity using the sequence set forth in Saucier.  129 S.Ct 808.  Instead, courts are now "permitted

13  to exercise their sound discretion in deciding which of the two prongs of the qualified immunity

14  analysis should be addressed first in light of the circumstances in the particular case at hand." 129

15  S.Ct at 818.  However, the Court noted the two- step Saucier protocol will still be beneficial in many

16  cases. Id.  Accordingly, courts may analyze qualified immunity in that manner at their discretion.

17      At the time of the events alleged in the complaint, it was clearly established that prisoners

18  have an Eighth Amendment right to be free from excessive force.  Martinez v. Sanford, 323 F.3d

19  1178, 1183-84 (9th Cir. 2003)("the law regarding a prison guard's use of excessive force was clearly

20  established by 1994 . . .[t]he Court's 'settled rule [is] that 'the unnecessary and wanton infliction of

21  pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.")(internal

22  citations omitted).   However, the Court has already determined that the evidence presented does not

23  support a finding of excessive force.  Because the defendants' conduct did not violate plaintiff's

24  Eighth Amendment rights, the Court hereby recommends a finding that both defendants are entitled

25  to qualified immunity on plaintiff's excessive force claim.

26

27  **2.    Plaintiff's Motion for Summary Judgment**

28

    Plaintiff contends he should be granted summary judgment because the defendants' failed to

object to the Magistrate Judge's Report recommending the denial of defendants' Motion to Dismiss. Plaintiff cites ninth circuit law supporting the proposition that in the absence of objections, "the district judge may assume the correctness of the magistrate judge's findings and recommendations." (Doc. 37-1 at 5.)  Because the Magistrate Judge determined plaintiff had pled sufficient facts to support an excessive force claim, and defendants did not object, plaintiff contends defendants cannot dispute the veracity of those facts here.  Id.   As a result, plaintiff argues there are no material facts in dispute.

Plaintiff also provides a list of injuries he allegedly suffered as a result of defendants' conduct and exhibits containing health records and medical articles.  The only factual allegation included in plaintiff's motion is that he experiences "Different Patterns of Leg weakness an numbness in connection with Defendants jumping donw on Plaintiff and putting knee into the Lower part of Plaintiff's Back with hold Body pressure weighing nearness to 300 pounds a Big Man (sic)."  Id. at 3.

Additionally, plaintiff attached a statement of undisputed facts to his summary judgment motion.  The two undisputed facts listed by plaintiff state he was incarcerated at the Richard J. Donovan Correctional facility during the relevant period and defendants Alvarado, Harris and Roberts were employed as corrections officers at that institution during the same period.  (Doc. 37-2.)

In their opposition, defendants contend plaintiff has failed to produce admissible evidence demonstrating he is entitled to judgment as a matter of law.  (Doc. 39 at 3.)  Defendants further contend plaintiff did not set forth his version of the facts in his motion and consequently fails to state how defendants violated his constitutional rights.  Id. at 4.

As mentioned previously, the moving party bears the initial burden of demonstrating there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Celotex, 477 U.S. at 323; F.R.C.P. 56 ( c).  In order to meet that burden, plaintiff must either produce evidence to demonstrate there is no genuine issue of material fact or show that the non- moving party does not have enough evidence to support its case.  Celotex, 477 U.S. at 323.

To prevail on an excessive force claim, plaintiff must show defendants used force against him in a malicious and sadistic manner for the purpose of causing harm.  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Thus, to receive summary judgment on this claim, plaintiff must show that defendants' subjective mindset, i.e. their malicious and sadistic intent, is not in dispute.

Plaintiff primarily relies on Judge Miller's order adopting the Magistrate Judge's Report to demonstrate there are no material facts in dispute.  This Court has already discussed Judge Miller's previous ruling that his order does not constitute evidence that can be used in support of a summary judgment motion.  (Doc. 32 at 2.)   Moreover, plaintiff's listing of his various injuries, as well as the attached exhibits describing and documenting the injuries, are insufficient to support a finding that defendants acted in a malicious and sadistic manner.  See generally Coverdell v. Department of Social and Health Services, 834 F.2d 758, 762 (9th Cir. 1987) (opposition repeating "unsworn factual allegations" contained in unverified complaint does not constitute evidence that can be used to counter summary judgment motion).  Plaintiff does not state the circumstances surrounding his injuries or when his injuries occurred.  Although plaintiff asserts that defendants caused some of those injuries, plaintiff fails to state how defendants' conduct evinces maliciousness rather than a good faith attempt to restore discipline after his persistent disobedience.  See Whitley, 475 U.S. at 320-21.("Force does not amount to a constitutional violation in this respect if it is applied in a good faith effort to restore discipline and order and not "maliciously and sadistically for the very purpose of causing harm.").  In sum, plaintiff has failed to set forth any evidence to support a finding of excessive force.  Accordingly, the Court recommends that plaintiff's Motion for Summary Judgment be **DENIED**.

.

## VI. CONCLUSION

Based on the foregoing reasons, IT IS HEREBY RECOMMENDED that the Court issue an order (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered GRANTING Defendants' Motion for Summary Judgment and DENYING Plaintiff's Motion for Summary Judgment.

This report and recommendation by the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, the Honorable Jeffrey T. Miller, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

IT IS ORDERED that, on or before **June 1, 2010**, any party to this action may file written

- 15 -

07cv1822

objections with the Court and serve a copy on all parties. The document should be captioned

"Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties on or before **June 11, 2010**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED**.

DATED: April 26, 2010

_____
LOUISA S PORTER
United States Magistrate Judge

cc:        The Honorable Jeffrey T. Miller
           All parties

- 16 -

07cv1822